CHARLOTTE MOTOR SPEEDWAY, INC. AND CHARLOTTE MOTOR SPEEDWAY, LLC, PLAINTIFFS v. TINDALL CORPORATION, FORMERLY TINDALL CONCRETE PRODUCTS, INC., DEFENDANT

No. COA08-600

(Filed 3 February 2009)

1. **Civil Procedure— motion to dismiss not converted into motion for summary judgment—no consideration of matters beyond pleadings**

The trial court did not improperly convert defendant's motion to dismiss for failure to state a claim into a motion for summary judgment because: (1) the trial court's order indicated that it dismissed the complaint under N.C.G.S. § 1A-1, Rule 12(b)(6) and did not mention any of the evidentiary matters appropriately considered on a motion for summary judgment; and (2) nothing in the record established that the trial court considered matters beyond the pleadings.

2. **Statutes of Limitation and Repose— Tolling Agreement— Interim Funding Agreement**

The trial court did not err in an indemnification case arising out of the negligent construction of a walkway by concluding the statutes of limitation and repose did not bar plaintiff's claims, and alternatively, that defendant was equitably estopped from asserting those defenses based on its agreement to waive them in the

---

CHARLOTTE MOTOR SPEEDWAY, INC. v. TINDALL CORP.

[195 N.C. App. 296 (2009)]

Tolling Agreement and Interim Funding Agreement because: (1) the Tolling Agreement expressly remained effective through and including 1 January 2006, and the statute of limitations did not bar the action when plaintiff filed suit less than two years after the tolling agreement expired; (2) the statute of repose did not bar the action since the Interim Funding Agreement operated to toll the statute of repose through the filing of plaintiff's complaint; and (3) assuming argument that plaintiff breached the Agreement by filing this action before the South Carolina litigation concluded, even a material breach by plaintiff would not have caused it to lose the benefit of the tolling provisions in the Interim Funding Agreement.

### 3. Indemnity— express contract—implied-in-law theory unavailable

The trial court did not err in an indemnification case arising out of the negligent construction of a walkway by concluding that plaintiff was not entitled to implied-in-law indemnity from defendant because: (1) an implied-in-law theory of indemnification is generally not available where there is an express contract; (2) the parties executed an express indemnification provision covering only injuries occurring during the performance of defendant's work on the walkway; and (3) plaintiff cannot be entitled to indemnity from defendant's active negligence when it was adjudicated as having no passive tortious liability for defendant's negligent act.

Appeal by Plaintiffs from order entered 13 December 2007 by Judge W. Erwin Spainhour in Superior Court, Mecklenburg County. Heard in the Court of Appeals 17 November 2008.

*Parker Poe Adams & Bernstein LLP, by David N. Allen, Lori R. Keeton, and Jason R. Benton, for plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr. and Reid L. Phillips, for defendant.*

WYNN, Judge.

"There can be no implied contract where there is an express contract between the parties in reference to the same subject matter."[1] Plaintiffs Charlotte Motor Speedway, Inc. and Charlotte Motor

---

1. *Greene v. Charlotte Chem. Labs., Inc.*, 254 N.C. 680, 691, 120 S.E.2d 82, 89 (1961) (citations omitted).

Speedway, LLC ("Speedway") argue that they are entitled to implied-in-law indemnification from Defendant Tindall Corporation ("Tindall") because their liability is derivative to Tindall's negligence. Because Speedway and Tindall executed an express indemnification provision that, by its terms, does not cover the losses for which Speedway seeks indemnification, we affirm the trial court's order of dismissal.

In May 1995, Speedway contracted with Tindall to construct a pedestrian walkway from the Charlotte Motor Speedway to the parking area. The construction contract included an indemnification clause, stating:

> [Tindall] shall indemnify and save harmless [Speedway], but only for claims for damages to property and personal injuries, including death, during the performance of the work herein and on the premises of [Speedway] and resulting directly and solely from negligence of [Tindall's] employees while engaged in such work.

At some point after execution, the words "but only" were stricken from the clause.

Construction of the walkway was completed in October 1995. However, the walkway collapsed in May 2000 during the Winston Cup NASCAR race. Thereafter, 103 of the pedestrians on the walkway brought actions against Speedway and Tindall in various state and federal courts. All North Carolina state court actions were consolidated on 20 September 2001.

On 28 September 2001, Speedway and Tindall executed a Tolling Agreement, which remained effective through 1 January 2006. Under that agreement, Speedway and Tindall agreed "to toll and suspend any applicable statute of limitations, repose or time, whether created by statute, contract, laches or otherwise, within which any cause, claim, action, cause of action, or suit must be made, or commenced by the parties against any one of them concerning the [pedestrian] claims, including any and all claims for indemnification and contribution."

In August 2002, Speedway and Tindall executed an Interim Funding Agreement agreeing to establish a trust fund with Anti-Hydro—the manufacturer of a product Tindall used to construct the walkway—for the payment of settlements. Under that agreement, Speedway and Tindall again agreed not to sue each other until the

CHARLOTTE MOTOR SPEEDWAY, INC. v. TINDALL CORP.

[195 N.C. App. 296 (2009)]

pedestrian litigation was resolved, and that all claims existing between them would be preserved.

On 28 August 2002, the trial court in one of the pedestrian lawsuits ruled that Speedway was liable to the pedestrians "for the acts and omissions of the defendant Tindall Corporation" on a theory of nondelegable duty. That ruling was later adopted and applied to all pending pedestrian lawsuits. A jury verdict in *Cindy A. Taylor, et al. v. Charlotte Motor Speedway*, 01-CVS-12107, determined liability between Speedway and Tindall as follows: 1) Speedway was not negligent; 2) Tindall's negligence injured the plaintiffs; and 3) Speedway breached its Encroachment Agreement (to construct the walkway in accordance with state standards) with the N.C. Department of Transportation; plaintiffs were third party beneficiaries of the Encroachment Agreement and were injured by Speedway's breach.

The last of the pedestrian lawsuits pending in North Carolina courts concluded on 27 June 2007 with our Supreme Court's denial of a petition for discretionary review. However, two pedestrian cases, neither of which named Speedway as a defendant, remained pending in South Carolina.

On 17 July 2007, Speedway brought the instant action seeking indemnification from Tindall on theories of implied and express indemnification. In turn, Tindall moved to dismiss Speedway's complaint under N.C. R. Civ. P. 12(b)(6). From the trial court's order granting Tindall's motion to dismiss, Speedway appeals arguing that the trial court erred: (I) by considering matters beyond the allegations of its complaint, thereby converting Tindall's motion to dismiss into a motion for summary judgment; (II) because neither the statute of limitations nor the statute of repose bars Speedway's claims; and (III) because, as a matter of law, Speedway is entitled to implied-in-law indemnity.

I.

[1] First, Speedway argues that the trial court impermissibly considered matters beyond its pleadings, in effect ruling on the merits of the claims and converting Tindall's motion to dismiss into a motion for summary judgment. Tindall answers that the plain language in the trial court's order indicates that it considered nothing beyond the pleadings, and that Speedway urged the trial court to go beyond the pleadings.

"A motion to dismiss for failure to state a claim is 'converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court.' " *King v. Cape Fear Mem'l Hosp., Inc.*, 96 N.C. App. 338, 342, 385 S.E.2d 812, 815 (1989) (quoting *Stanback v. Stanback*, 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979)). Requests, explanations, and arguments of counsel relating to a motion to dismiss are not considered matters outside the pleadings. *Id.* Reviewing courts have looked to cues in the trial court's order to determine whether it considered matters outside the pleadings. *See Lowder v. Lowder*, 68 N.C. App. 505, 506, 315 S.E.2d 520, 521 (1984) ("It is apparent from the wording of the order of dismissal that the trial court considered the record of proceedings in *Lowder, et al. v. All Star Mills, Inc., et al*, No. 79CVS015, supra."). Moreover, where non-movants fully participated in the hearing on a motion to dismiss, observed that matters beyond the pleadings were being considered, and failed to request additional time to produce evidence, reviewing courts have not been persuaded that dismissal was inappropriate. *See Belcher v. Fleetwood Enters., Inc.*, 162 N.C. App. 80, 84, 590 S.E.2d 15, 18 (2004) (citing *Knotts v. City of Sanford*, 142 N.C. App. 91, 97-98, 541 S.E.2d 517, 521 (2001)).

At the hearing on Tindall's motion to dismiss, the trial court heard arguments regarding factual evidence, rulings, and jury instructions in at least one of the underlying pedestrian suits. The parties also made arguments regarding the Interim Funding Agreement. The trial court's order, however, includes only the following relevant language:

> IT APPEARING to the Court, having reviewed the pleadings and the briefs submitted by the parties, and having heard the oral argument by counsel for the parties at the December 5, 2007 hearing, that the Complaint fails to state a claim upon which relief can be granted and that the Motion to Dismiss therefore should be allowed pursuant to Rule 12(b)(6) . . . .

Thus, the trial court's order indicates that it dismissed the complaint under N.C. R. Civ. P. 12(b)(6), and notably, does not mention any of the evidentiary matter appropriately considered on a motion for summary judgment. Moreover, nothing in the record establishes that the trial court considered matters beyond the pleadings. Because the record does not indicate that the trial court converted the motion to dismiss into a summary judgment motion, we reject this assignment of error.

## II.

**[2]** Speedway next argues that the statutes of limitation and repose do not bar its claims, and alternatively, that Tindall should be equitably estopped from asserting those defenses because it agreed to waive them in the Tolling Agreement and Interim Funding Agreement (collectively "Agreements"). In response, Tindall argues that Speedway's action is time-barred, and that Speedway lost the benefit of the Agreements when it breached them by filing this suit before all underlying pedestrian suits concluded.

The statute of limitations period for an indemnity contract is three years. N.C. Gen. Stat. § 1-52(1) (2008). The applicable statute of repose provides that "[n]o action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement." N.C. Gen. Stat. § 1-50(a)(5)a (2008).

In this case, Tindall alleges that the statute of limitations bars Speedway's claim for indemnification of any monies paid prior to three years before it filed its complaint. Speedway filed the complaint in this case on 17 July 2007. However, Tindall's argument ignores the operation of the Tolling Agreement, which expressly remained effective "through and including January 1, 2006." Because Speedway filed suit less than two years after the Tolling Agreement expired, we hold that the statute of limitations does not bar this action, and Tindall's argument must fail.

Likewise, the statute of repose does not bar this action. The Walkway was substantially completed on 9 October 1995; the parties executed the "Tolling Agreement" on 28 September 2001, within six years from substantial completion of the walkway. Although the Tolling Agreement expired on 1 January 2006 (and this action was not filed until more than one year later), the parties executed the Interim Funding Agreement on 8 August 2002, in which they agreed that they would not sue each other until all pedestrian claims were resolved.[2] The pedestrian lawsuits were still pending when Speedway

---

2. Tindall argues, on appeal, that this Court should not consider the Interim Funding Agreement because it does not appear on the face of the pleadings. In its Memorandum of Law Supporting its Motion Dismiss before the trial court, however, Tindall quoted extensively from the Interim Funding Agreement, and argued that Speedway was not entitled to its benefit because of a breach. Therefore, Tindall may

filed the complaint in this case on 17 July 2007; thus the Interim Funding Agreement operated to toll the statute of repose through the filing of Speedway's complaint.

Tindall argues that Speedway lost the benefit of the Interim Funding Agreement's tolling provisions because Speedway breached the Agreement by filing this action before the South Carolina litigation concluded.[3] The question of whether a breach of contract is material is ordinarily a question for a jury. *See Combined Ins. Co. of Am. v. McDonald*, 36 N.C. App. 179, 184, 243 S.E.2d 817, 820 (1978). But assuming, *arguendo*, that the breach was material, at most Tindall would have been allowed to sue Speedway prior to the end of the pedestrian litigation. Tindall cites cases stating that a material breach relieves the non-breaching party of the obligation to perform. *See, e.g., McClure Lumber Co. v. Helmsman Constr. Co.*, 160 N.C. App. 190, 198, 585 S.E.2d 234, 239 (2003); *F. Industs., Inc. v. Cox*, 45 N.C. App. 595, 602, 263 S.E.2d 791, 795 (1980). However, Tindall's relevant performance obligation under the Interim Funding Agreement was to refrain from suing Speedway until the underlying pedestrian litigation was resolved. Thus, even a material breach by Speedway would not have caused it to lose the benefit of the tolling provisions in the Interim Funding Agreement. Together, the Agreements operate to toll the statute of repose through the filing of Speedway's complaint.

III.

[3] In its next assignment of error, Speedway argues that its liability is merely derivative to Tindall's negligent construction of the walkway, and thus it is entitled to implied-in-law indemnity from Tindall. In response, Tindall argues that the express indemnification provision in the parties' construction agreement precludes Speedway's implied-in-law indemnity theory.

An implied-in-law contract for indemnification is generally based upon the doctrine of primary-secondary liability. *Greene v. Charlotte Chem. Labs., Inc.*, 254 N.C. 680, 691, 120 S.E.2d 82, 89 (1961) (citing *Hunsucker v. High Point Binding & Chair Co.*, 237 N.C. 559, 75 S.E.2d 768 (1953)). Where "a passively negligent tortfeasor has dis-

---

not argue for the exclusion of the Interim Funding Agreement in this appeal because "arguments of counsel relating to a motion to dismiss are not considered matters outside the pleadings." *King*, 96 N.C. App. at 342, 385 S.E.2d at 815.

3. Tindall concedes that Speedway was not a named party to any outstanding cases when it filed this action.

charged an obligation for which the actively negligent tortfeasor was primarily liable," as a matter of fairness, the actively negligent tortfeasor may be found to have made an implied promise to indemnify the passively negligent tortfeasor. *Id.* However, an implied-in-law theory of indemnification is generally not available where there is an express contract. *Id.* ("If there is an express contract of indemnity, the indemnitee is relegated to his contract, a matter not germane to plaintiff's tort action.")

Here, Speedway and Tindall executed an express indemnification provision which, by its terms, covered only injuries "occurring during the performance of [Tindall's] work" on the walkway. Moreover, Speedway was found not to be a tortfeasor in the trial court. Speedway's liability was adjudicated as purely contractual— it breached a nondelegable duty and the Encroachment Agreement with the NCDOT, of which the injured pedestrians were third-party beneficiaries.

Nonetheless, Speedway attempts to overcome the express indemnification provision and its pure contractual liability by citing *Northeast Solite Corp. v. Unicon Concrete, LLC*, 102 F. Supp. 2d 637, 640 (M.D.N.C. 1999) for the proposition that implied-in-law indemnity may be found based on pure contractual liability. However, *Northeast Solite* is distinguishable from the instant case on at least two material points. First, the District Court in *Northeast Solite* was careful to note that the party seeking indemnification had not "asserted the existence of an express indemnification agreement . . . ." *Id.* at 641. Moreover, the party seeking indemnification in *Northeast Solite* claimed a misrepresentation of authority to modify a noncompete agreement as the basis for its claim for implied-in-law indemnification. *Id.* Therefore, no tort was at issue in *Northeast Solite*.

In this case, on the other hand, an express indemnification provision exists which does not cover injuries occurring after the walkway was completed. Furthermore, Speedway seeks indemnity for Tindall's tortious construction of the walkway, but Speedway was not adjudicated a tortfeasor. Therefore, Speedway cannot be entitled to indemnity for Tindall's active negligence when it was adjudicated as having no passive tortious liability for Tindall's negligent act.

In sum, we affirm the dismissal of Speedway's complaint.

Affirmed.

Judges STEPHENS and JOHNSON concur.